1   **WO**                    NOT FOR PUBLICATION

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                 **FOR THE DISTRICT OF ARIZONA**

8

9   Eric Mobley,                          No. CV-14-02052-PHX-JJT

10                    Plaintiff,           **ORDER**

11  v.

12  Mayo Clinic Rochester, *et al.*,

13                    Defendants.

14

15         At issue are *pro se* Plaintiff Eric Mobley's Motion for Summary Judgment[1] (Doc.

16  100, Pl.'s Mot.), to which Defendants Mayo Clinic (Rochester) and Mayo Clinic Arizona

17  filed a Response (Doc. 116, Defs.' Resp.), and Plaintiff filed a Reply[2] (Doc. 119, Pl.'s

18  Reply); and Defendants' Motion for Summary Judgment (Doc. 101, Defs.' Mot.), to

19  which Plaintiff filed an Amended Response (Doc. 110, Pl.'s Resp.), and Defendants filed

20

21         [1] Plaintiff's Motion is entitled "Dispositive Motion," but is brought pursuant to
22  Federal Rule of Civil Procedure 56 and is later styled as one seeking summary judgment.

23         [2] Plaintiff's Reply is entitled "Plaintiff's Response to [Defendants'] Response to
    Plaintiff's Motion," and purports to include a "Response to [Defendants'] Reply in
24  Support of their Motion for Summary Judgment" (Doc. 118), as well as "Response to
    [Defendants'] Controverting Statement of Facts." While the Court accepts the document
25  as Plaintiff's Reply in Support of his Motion for Summary Judgment, it cannot construe it
    as a Sur-Reply in Response to Defendants' Motion for Summary Judgment, *See* LRCiv
26  7.2, and the purported Controverting Statement of Facts is to be separately filed
    contemporaneously with Plaintiff's opening Motion, not his Reply, *See* LRCiv 56.1. *See*
27  *Millenium 3 Technologies v. ARINC, Inc.*, No. CV08-1257-PHX-JAT, 2008 WL
    4737887, at *2 (D. Ariz. Oct. 29, 2008) (Sur-Replies and Sur-Responses are not
28  authorized by Rule 7, any other Federal Rule of Civil Procedure, or this District's Local
    Rules, absent prior leave of court); *Padilla v. Bechtel Const. Co.*, No. CV 06 286 PHX-
    LOA, 2007 WL 625927, at *1 (D. Ariz. Feb. 27, 2007) (regarding Sur-Responses).

1  a Reply (Doc. 118, Defs.' Reply). The Court elects to resolve the parties' cross motions

2  for summary judgment without oral argument. *See* LRCiv 7.2(f).

3  **I.    BACKGROUND**

4        Defendant Mayo Clinic Arizona is a non-profit corporation and subsidiary of

5  Mayo Clinic (referred to by Plaintiff as Mayo Clinic Rochester), a non-profit corporation

6  based in Rochester, Minnesota. Defendants hired Plaintiff Eric Mobley in 1998 to work

7  at Mayo Clinic Arizona. Plaintiff performed several different jobs while employed by

8  Defendants and during the relevant time period was working as a financial representative

9  in Patient Account Services and a member of the Pre-Appointment Review ("PAR")

10 team. As such, Plaintiff reported to Debra Bratton and was tasked with telephonically

11 interacting with patients. In addition to his primary telephonic duties, Plaintiff was

12 required to review "flag reports," which consist of patients that have upcoming

13 appointments and outstanding balances. PAR team members must analyze the report,

14 liaise with physicians, physician's staff, and patients, and allow only medically necessary

15 appointments to proceed when an outstanding balance is due.

16       In 2011, Plaintiff applied for a promotion to team lead. While Plaintiff interviewed

17 and was ranked second based on the interviewers' stated criteria, another employee—

18 Anita Demar—ranked first and received the promotion. Plaintiff did not

19 contemporaneously contest the promotion denial or claim that it was based on sex or

20 race.

21       At a contested point in 2012 or 2013, Plaintiff sought to begin teleworking. Before

22 granting such requests, Defendants' policy requires six months of satisfactory

23 performance based on internal performance metrics, as well as training specific to

24 teleworking. After Plaintiff satisfied the requirements, on November 26, 2013, Plaintiff

25 began teleworking and ceased to report to the physical Mayo Clinic Arizona facility on a

26 daily basis. In order to closely monitor the activity of its teleworking employees,

27 Defendants utilize a number of technologies—HealthQuest, Cerner, and a project

28 management information system ("PMIS")—that allow them to compile detailed

statistics regarding phone calls (outbound v. inbound, duration, etc.), monitor its employees' calls, and track internet and email usage. Defendants also employ a software program called Blue Pumpkin which sets four-to-six hour periods during which employees are scheduled to receive calls. Employees are then allotted an additional two hours to work on auxiliary matters, make outbound calls, and track appointments. PAR team members typically receive an additional scheduled hour to work on flag reports.

In January 2014, Plaintiff received oral counseling after he failed to clock out for the lunch hour. In April 2014, Plaintiff had a series of dialogues with Beth Vitse that led to a coaching session regarding his performance metrics. Plaintiff disagreed with Vitse's assessment of his work and sought counsel from Human Resource Service Partner Chris Lwowski regarding the assessment.

Also in April 2014, Plaintiff's co-worker Deborah Kossob reported that Plaintiff had not logged into his system to work on the flag report when scheduled. In discussing with other employees, Kossob identified several dates that Plaintiff failed to log in after his lunch hours to work on flag reports. After reviewing their HealthQuest, Cerner, and PMIS records, Defendants could not identify 10.5 hours of work Plaintiff purportedly performed in March and April 2014.

On May 8, 2014, Bratton and Plaintiff telephonically discussed the timekeeping discrepancies. During the call, Plaintiff reported that he had used the hours in question to email physicians and provided descriptions of that work. However, Defendants were unable to locate the purported emails that verified the tasks Plaintiff detailed. Defendants requested the corroborating emails from Plaintiff, who responded that he had since deleted them.

On May 15, 2014, Defendants terminated Plaintiff. Defendants informed Plaintiff he was dismissed for failing to abide by their time reporting policy. On May 29 and 30, 2014 Plaintiff requested an internal appeal of his termination, and the termination was largely sustained.

1    Once terminated, Plaintiff made several allegations of discriminatory conduct that
2    occurred during his employment. During 2013, Plaintiff alleges that Demar verbally
3    denigrated him in the workplace. Also in 2013, and in the years preceding, Plaintiff
4    alleges that Bratton inappropriately rubbed his shoulders one-to-three times per month.
5    While the number and intensity of these interactions are contested, the parties agree that
6    Bratton placed her hands on the shoulders of employees, including Plaintiff, at least once.
7    Plaintiff also claims that he made various oppositional statements regarding racial and
8    sexual harassment in April and May of 2014 to coworker Beth Vitse and Lwowski and
9    numerous other complaints of typical employment grievances.

10    On May 27, 2014, Plaintiff filed an EEOC charge against Mayo Clinic Arizona
11    alleging sex and race discrimination, as well as retaliation. On June 19, 2014, the EEOC
12    closed its file based on its failure to conclude that the information obtained established
13    violations of the statutes and provided Plaintiff with a Right to Sue Letter.

14    **II.    LEGAL STANDARD**

15    Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is
16    appropriate when: (1) the movant shows that there is no genuine dispute as to any
17    material fact; and (2) after viewing the evidence most favorably to the non-moving party,
18    the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v.*
19    *Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285,
20    1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect
21    the outcome of the suit under governing [substantive] law will properly preclude the
22    entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
23    A "genuine issue" of material fact arises only "if the evidence is such that a reasonable
24    jury could return a verdict for the nonmoving party." *Id.*

25    In considering a motion for summary judgment, the court must regard as true the
26    non-moving party's evidence, if it is supported by affidavits or other evidentiary material.
27    *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party
28    may not merely rest on its pleadings; it must produce some significant probative evidence

1    tending to contradict the moving party's allegations, thereby creating a material question

2    of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative

3    evidence in order to defeat a properly supported motion for summary judgment); *First*

4    *Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

5          "A summary judgment motion cannot be defeated by relying solely on conclusory

6    allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

7    1989). "Summary judgment must be entered 'against a party who fails to make a showing

8    sufficient to establish the existence of an element essential to that party's case, and on

9    which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d

10   1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322). "As a general matter, the

11   plaintiff in an employment discrimination action need produce very little evidence in

12   order to overcome an employer's motion for summary judgment." *Chuang v. Univ. of*

13   *Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000).

14         *Pro se* litigants are not held to the same standard as admitted or bar licensed

15   attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Pleadings by *pro se* litigants,

16   regardless of deficiencies, should only be judged by function, not form. *Id.* However,

17   although the Court must construe the pleadings liberally, "*[p]ro se* litigants must follow

18   the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565,

19   567 (9th Cir. 1987).

20   **III.   ANALYSIS**

21         **A.    Plaintiff's Motion for Summary Judgment**

22         At the outset, the Court must address Plaintiff's Motion for Summary Judgment

23   and the deficiencies therein. Although Plaintiff's relatively brief Motion quotes Federal

24   Rule of Civil Procedure 56 in its entirety, Plaintiff fails to comply with much of that

25   Rule. Regardless of his *pro se* status, at summary judgment, the elements Plaintiff must

26   prove and Plaintiff's burden of proof are not relaxed simply because he is appearing

27   without the assistance of counsel. *Jacobsen*, 790 F.2d at 1364; *see also Thomas v.*

28

1    *Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) ("an ordinary *pro se* litigant, like other

2    litigants, must comply strictly with the summary judgment rules") (citation omitted).

3           Initially, Plaintiff fails to identify for which claims or parts of claims he is entitled

4    to summary judgment. Nor has Plaintiff attached a separate statement of facts, included

5    citations to a particular portion of the record to substantiate his assertions, or properly

6    attached any affidavits or declarations to his Motion. Rule 56.1 of the Local Rules of

7    Civil Procedure explicitly demands that the party seeking summary judgment file a

8    separate statement "setting forth each material fact on which the party relies in support of

9    the motion. Each material fact . . . shall refer to a specific admissible portion of the record

10   where the fact finds support." LRCiv 56.1(a). As the movant, Plaintiff bears the initial

11   burden of "identifying those portions of 'the pleadings, depositions, answers to

12   interrogatories, and admissions on file, together with the affidavits, if any,' which [he]

13   believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477

14   U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). Plaintiff has not met his burden.

15          Although Plaintiff did include a statement of facts in his Reply, complete with

16   citations to bates ranges, this is utterly deficient. The purpose of requiring the moving

17   party to file a statement of facts in support of his motion is to allow the non-movant to

18   controvert those specific facts that the moving party claims entitles him to summary

19   judgment. Here, Defendants were deprived of that opportunity. The vast majority of

20   Plaintiff's facts, and the entirety of his citation to the record, exists only in his Reply, to

21   which Defendant is unable to respond. Fed. R. Civ. P. 7, 56; LRCiv 7.2. Even when

22   construing Plaintiff's papers in substance, rather than form, the Court cannot so

23   disadvantage the non-moving party. For this reason alone, as well as the other

24   deficiencies in Plaintiff's filings, the Court must deny his Motion for Summary

25   Judgment.[3] *See* LRCiv 56.1(a) (stating that the failure to file a separate statement of facts

26

27          [3] Even were the Court to consider Plaintiff's Motion, despite its deficiencies,
     Plaintiff's failure to file a statement of facts effectively waives his ability to differ from

28   Defendants' Separate Statement of Facts. Accordingly, Defendants' facts would be
     deemed admitted, inherently creating a genuine issue of material fact as to Plaintiff's
     Motion. *See Obuchowski v. Spraylat Corp.*, No. CIV 05-03145 PHX-MEA, 2007 WL

may constitute grounds for denying a summary judgment motion); *Niemczynski v. Arpaio*, No. CV09-0048-PHX-DGC, 2009 WL 3262009, at *2 (D. Ariz. Oct. 8, 2009) (denying motion for summary judgment for failure to file a separate statement of facts); *Hunt v. Northland Trucking*, CV-07-481-PHX-DGC, 2007 WL 2081466, at *1 (D. Ariz. July 20, 2007) (same).

### B.   Defendants' Motion for Summary Judgment

#### 1.   Procedural Defects

As in his affirmative motion for summary judgment, Plaintiff has failed to comply with numerous federal and local rules in opposing summary judgment. First, Plaintiff again failed to file a separate, contravening statement of facts as mandated by Federal Rule of Civil Procedure 56(e) and Local Rule 56.1(b). The failure to submit a separate controverting statement of facts, alone, can be fatal to opposing summary judgment. *See Malcomson v. Topps Co.*, No. CV-02-2306-PHX-GMS, 2010 WL 383359, at *3 (D. Ariz. Jan. 28, 2010). However, Plaintiff did incorporate a "facts" section in his Response. (Resp. at 2-10.[4]) Even then, Plaintiff has failed to set forth numbered paragraphs that correspond to Defendants' numbered paragraphs, or to otherwise respond to Defendants' discrete factual assertions. The Rule specifically requires that the non-moving party must address every one of the material facts that the moving party set forth, and that any additional facts that establish a genuine issue of material fact must refer to "specific admissible portion[s] of the record where the fact[s] find support. LRCiv 56.1(b). That Rule further provides that "[e]ach numbered paragraph of the statement of facts set forth in the moving party's separate statement of facts shall, unless otherwise ordered, be deemed admitted for purposes of the motion for summary judgment if not specifically controverted by a correspondingly numbered paragraph in the opposing party's separate

---

2381271, at *2 (D. Ariz. Aug. 17, 2007) ("The failure to file a separate statement of facts results in the facts asserted by the moving party being deemed admitted.").

[4] None of Plaintiff's filings contain page numbers as required by Local Rule of Civil Procedure 7.1(b)(1). Accordingly, the Court refers to pages as identified in the electronic filing running header.

statement of facts." *Id.* Thus, the Court could deem admitted Defendants' entire 80 paragraph Statement of Facts. However, given the phrase, "unless otherwise ordered," the Court "has the discretion, but is not required, to deem the uncontroverted facts admitted." *Baker v. D.A.R.A. II, Inc.*, No. CV-06-2887-PHX-LOA, 2008 WL 80350, at *3 (D. Ariz. Jan. 4, 2008).

Second, Plaintiff's Response repeatedly violates Federal Rule of Civil Procedure 56(c) and Local Rule of Civil Procedure 56.1(e). "Memoranda of law filed . . . in opposition to a motion for summary judgment . . . must include citations to the specific paragraph in the statement of facts that supports assertions made in the memoranda regarding any material fact on which the party relies . . . ." LRCiv 56.1(e). Plaintiff does not cite to the statement of facts—which are improperly incorporated in his Response— and routinely references large swathes of the record in support of discrete claims.[5] Indeed, Plaintiff's citations include supplemental discovery disclosures in their entirety and 41 exhibits attached to his Response. Accordingly, the facts the Court shall rely on are gleaned primarily from Defendants' Statement of Facts, and those facts included in Plaintiff's filings for which there is identifiable evidentiary support. *See Malcomson*, 2010 WL 742613, at *1 (noting that even when the Court considered facts set forth in the same document as plaintiff's motion—in violation of federal and local rules—the failure to refer to specific admissible portions of the record is fatal).

Third, Plaintiff's Response refers to the exhibits to his Motion for Summary Judgment, which, while voluminous, include what can only be described as memoranda that attempt to explain the documents therein. (*E.g.*, Doc. 104-1 at 3-8, 15-16.) These memoranda are argument and thus improper, particularly in light of the fact that

---

[5] The Court again acknowledges that Plaintiff's Reply in Support of his Motion for Summary Judgment (Doc. 119)—which also purports to function as a Sur-Reply in opposition to Defendants' Motion for Summary Judgment—does include pin citations to more discrete portions of the record. While the Court has provided Plaintiff wide latitude in attempting to judge the substance, rather the form, of Plaintiff's filings it cannot so hamper Defendants by considering Plaintiff's improper Sur-Reply and the citations therein. LRCiv 7.2; *Jones v. ReconTrust Co.*, No. CV-12-8079-PCT-FJM, 2013 WL 3155118, at *1 (D. Ariz. June 19, 2013) (striking plaintiff's Sur-Reply to defendant's motion for summary judgment as unauthorized by local rules).

1   Plaintiff's Response already doubles the page-limit prescribed by Local Rule 7.2(e)(1),

2   largely due his incorporation of his statement of facts within his Motion. Such

3   noncompliance with page limitations alone can create great difficulty for Defendants in

4   their efforts to respond to material facts in a manner that does not in turn violate the

5   Rules. The Court cannot consider these memoranda which in isolation would themselves

6   greatly surpass the applicable page-limit.

7           While it is within the Court's discretion to strike portions, or the entirety, of

8   Plaintiff's procedurally deficient documents, given his *pro se* status, the Court will

9   consider the filings on the merits—to the degree it is able to do so and except as already

10  noted. Where it cannot not easily do so, the Court exercises its discretion, invokes LRCiv

11  56.1(b)(1), and deems Defendants' facts admitted. *Szaley v. Pima Cnty.*, 371 Fed. App'x

12  734, 735 (9th Cir. 2010) (holding that district court "properly deemed Defendant's

13  statement of facts to be true because Plaintiff failed to comply with Local Rule 56.1(b)"

14  in Title VII action). Proceeding in this way is consistent with the well accepted view that

15  "a district court does not have a duty to search for evidence that would create a factual

16  dispute." *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007). While the Court will

17  attempt to consider the entire record, "[the nonmoving party's] burden to respond is

18  really an opportunity to assist the court in understanding the facts. But if the nonmoving

19  party fails to discharge that burden—for example by remaining silent—its opportunity is

20  waived and its case wagered." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405

21  (6th Cir. 1992); *Taylor v. AFS Techs., Inc.*, No. CV-09-2567-PHX-DGC, 2011 WL

22  1237609, at *6 (D. Ariz. Apr. 4, 2011) (the Court relies on "'the nonmoving party to

23  identify with reasonable particularity the evidence that precludes summary judgment.'")

24  (citing Fed. R. Civ. P. 56(e)(2)). Even then, only those assertions in the Response that

25  have evidentiary support will be considered. Fed. R. Civ. P. 56(c)(1)(A)

26          **2.      Other Defects**

27          In addition to the purely procedural defects present in Plaintiff's Response, the

28  Court is compelled to address further shortages. First, much of Plaintiff's Response

attacks defense counsel's credibility (as well as that of previous defense counsel). Plaintiff frequently refers to counsel by name, questions their character, and addresses what he contends are attacks on his credibility or his claims. (*E.g.*, Pl.'s Resp. at 4 ("Winterscheidt lacks credibility"), 15 ("Lomax . . . [is] attempting to mislead the court").) The same can be said for the credibility of his former supervisor Bratton, who is a frequent target in Plaintiff's brief. (*E.g.*, Pl.'s Resp. at 3 ("Bratton has had no credibility in this lawsuit whatsoever").) None of the preceding are pertinent to the resolution of Defendants' Motion.[6] The credibility of Defendants, Plaintiff, each party's contentions, and witnesses are reserved for the ultimate fact-finder and not addressed at the summary judgment stage. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). The sole inquiry for the Court is whether a genuine issue of material fact exists as to any of Plaintiff's claims based on the Complaint, moving papers, and record before it. Further, the character of counsel is rarely at issue and irrelevant to the resolution of this Motion for Summary Judgment. In particular, Plaintiff's allegations of witness tampering under 18 U.S.C. § 1512 and A.R.S. § 13-2804 (Pls.' Resp. at 8) are not to be brought in response to a motion for summary judgment. Plaintiff's allegations are serious, and to base such accusations on counsel's alleged failure to inquire about a deponent's current medication use is wholly inappropriate.

Second, Plaintiff responds to many of Defendants' arguments and factual assertions with attestations of what certain witnesses will testify to at trial. (*E.g.*, Pl.'s Resp. at 3, 4, 6, 18.) Plaintiff cannot survive summary judgment by submitting speculative avowals of what those on his witness list will ultimately swear to. Instead, Plaintiff must provide that testimony, through declaration, deposition, or otherwise. LRCiv 56.1(a).

---

[6] Plaintiff also references representations made in conjunction with settlement attempts (Pl.'s Resp. at 3), which are inadmissible under Federal Rule of Evidence 408.

Third, Plaintiff makes a variety of allegations regarding Defendants' failure to produce certain documents. (*E.g.*, Pls.' Resp. at 5.) To start, any document Plaintiff attests to have viewed prior to the initiation of this lawsuit, but not produced in discovery by either party, is not properly before the Court. Further, Plaintiff's description of documents in his Response, rather than in any declaration or affidavit, is not sworn to and cannot be considered in determining the existence of a triable issue of fact. The Court also notes that Defendants' alleged failure to produce a document that Plaintiff declares exists, by itself, does not suggest that it was improperly withheld, destroyed, or altered. Just as the Court stated in its Order denying Plaintiff's Motion to Compel (Doc. 113), which was brought well after the close of discovery, Plaintiff's vague assertions regarding incomplete or deficient responses to Plaintiff's requests do not create the specter of improper conduct and are to be made well before the summary judgment phase.

Fourth, Plaintiff has attached several documents to his Response that he did not produce in discovery. This includes the newly disclosed October 2010 appeal (Doc. 97-2, Doc. 104-3)[7] and memorandum purportedly drafted October 18, 2010 (Doc. 104-3 at 40). Despite previous testimony to the contrary (Doc. 106-2 at 90), Plaintiff also attests to new factual allegations in his Response. (Pl.'s Mot. at 9.) None of the unproduced evidence is properly in the record.[8] Fed. R. Civ. P. 56(e); *see also Briese Lichttechnik Vertriebs GmbH v. Langton*, No. 09 CIV. 9790 LTS-MHD, 2012 WL 3084520, at *3 (S.D.N.Y. July 26, 2012) (precluding defendant from utilizing on summary judgment any document not produced in discovery); *Divane v. Dunning Elec. Serv., Inc.*, No. 11 CV 4915, 2013 WL 1442219, at *3 (N.D. Ill Apr. 5, 2013) (striking documents attached to affidavit that

---

[7] The Court need not address the mutual allegations of fabrication or alteration regarding this document and does not do so here. Only one version was produced by either party in discovery and that version alone can be relied on by the parties and the Court.

[8] Even were the Court to consider the new comments alleged in Plaintiff's Response, they are not sworn to by any party—including Plaintiff, as they appear in the body of his unsworn Response—and are otherwise inadmissible.

had not been produced in discovery); *Gilles v. Pleasant Hill Elementary Sch. Dist. No. 69*, No. 09-1335, 2011 WL 5005995, at *3 (C.D. Ill. Oct. 20, 2011) ("The law is very clear: evidence that was not properly produced during discovery cannot be used to support or oppose summary judgment."). While the Court may be sympathetic to Plaintiff regarding newly discovered or remembered evidence, the extended fact discovery deadline lapsed on January 12, 2016. (*See* Doc. 88.) The parties were well aware of the deadlines in this matter and the Court warned Plaintiff at the Rule 16 Scheduling Conference in June 2015 that he was responsible for following all of this Court's Orders, including the Scheduling Order. (*See* Doc. 47.) Moreover, this matter has been pending for over two years. Both parties had ample time during the pendency of this action to marshal evidence supportive of their positions, including those solely within the memories of parties.

Finally, Plaintiff fails to cite a single case supportive of his opposition to Defendants' Motion. While Plaintiff purportedly addresses each case cited by Defendants, he does so in wholly conclusory fashion. (*E.g.*, Pl.'s Resp. at 23 (stating that Defendants' cited precedent is "irrelevant" and "inadmissible," with no further explanation); 30 (summarily stating that (Defendants' counsel) "Lomax cited another irrelevant case that is non-comparable to Plaintiff's case").)

While these deficiencies and irrelevancies are not fatal to Plaintiff's Response in and of themselves, they are pertinent to this Court's decision in that immaterial assertions, unrelated accusations, inapt legal argument, and evidence not in the record are wholly unsupportive of Plaintiff's opposition. Factual disputes that are extraneous or unnecessary are also to be discounted. *Anderson*, 477 U.S. at 248 (citing 10A Fed. Prac. & Proc. Civ. § 2725 (4th ed.)); *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 n.14 (2d Cir. 1981) (explaining that facts submitted by an opposing party in a summary judgment motion "must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions").

1      **3.      Title VII Claim**

2          In his Complaint, Plaintiff claims he was discriminated against because of his

3   gender and race, in violation of Title VII. (Compl. ¶¶ 77-91.) Under Title VII, an

4   employer may not "discriminate against an individual with respect to [their] . . . terms,

5   conditions, or privileges of employment" because of their sex or race. 42 U.S.C. §

6   2000e–2(a). "This provision makes 'disparate treatment' based on sex [or race] a

7   violation of federal law." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061–62

8   (9th Cir. 2002).

9          In order to show disparate treatment under Title VII, Plaintiff must first establish a

10  *prima facie* case of discrimination as the United States Supreme Court set forth in

11  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Specifically, he must show

12  that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was

13  subjected to an adverse employment action; and (4) similarly situated [members of

14  different race or sex] were treated more favorably . . . ." *Villiarimo*, 281 F.3d at 1062

15  (citing *McDonnell Douglas*, 411 U.S. at 802).

16         "If the plaintiff establishes a *prima facie* case, the burden of production—but not

17  persuasion—then shifts to the employer to articulate some legitimate, nondiscriminatory

18  reason for the challenged action. . . . If the employer does so, the plaintiff must show that

19  the articulated reason is pretextual 'either directly by persuading the court that a

20  discriminatory reason more likely motivated the employer or indirectly by showing that

21  the employer's proffered explanation is unworthy of credence.'" *Id*. (internal citations

22  and quotations omitted). A plaintiff may rely on circumstantial evidence to demonstrate

23  pretext, but such evidence must be both specific and substantial. *Id*. At the last step, if the

24  plaintiff can show pretext, the only remaining issue is whether discrimination occurred or

25  not. *Id*.

26         Defendants contend they are entitled to summary judgment on the grounds that

27  Plaintiff has failed to establish a prima facie case under the fourth factor, requiring him to

28

1    show that he was treated differently than similarly situated Caucasian and female

2    employees.[9] (Defs.' Mot. at 8-11.) For the reasons that follow, the Court agrees.

3            Defendants first contend that they did not discriminatorily terminate Plaintiff.

4    (Defs.' Mot. at 9-10.) To support their contention, Defendants provide evidence that a

5    number of employees of different races and sexes have been disciplined and terminated

6    for timekeeping violations. (DSOF ¶¶ 11, 51.) Plaintiff responds that the list of those that

7    received discipline or were terminated for alleged violations of the time reporting policy

8    worked in different departments, reported to different superiors, and were therefore not

9    similarly situated comparators. (Pl.'s Resp. at 11.) However, pointing to minor

10   discrepancies in Defendants' proposed comparators does not dissolve their usefulness.

11   Defendants' evidence supports their contention that their timekeeping policy was strictly

12   and unanimously enforced. Defendants' use of technology to monitor their teleworking

13   employees bolsters this contention, and Plaintiff has failed to present evidence that it was

14   used to fabricate a foundation for termination. Indeed, Plaintiff's own testimony—which

15   he recants in his Response—illustrates that he was unsure whether his termination was

16   race-based. (DSOF ¶ 69.)

17           Even when accepting Defendants' proposed comparators, Plaintiff argues that

18   many did not receive corrective actions or terminations. (Pl.'s Resp. at 11.) Plaintiff's

19   argument is a curious one—both pointing out the lack of analogous employees and

20   relying on them to prove his disparate treatment case. It is also contradicted by the

21   evidence. Defendants' proffered evidence shows that any known conduct violative of the

22   time reporting policy was evenhandedly addressed, and Plaintiff fails to identify any

23   controverting portions of the record. Plaintiff's only remaining response is that he has

24   provided names of those who "grossly violated" Defendants' timekeeping policy but

25   were not similarly dismissed or disciplined. (Pl.'s Resp. at 11.) Plaintiff cannot show

26   _____

27       [9] Defendants concede, for the purposes of their Motion, that a 300-day period
     preceding Plaintiff's May 27, 2014 EEOC charge falls within the scope of his Title VII
28   claim. (Defs.' Mot. at 8.) Still, Plaintiff's lost promotion claim, as well as any other
     alleged discrimination or retaliation occurring prior to July 31, 2013 cannot be brought
     under Title VII.

disparate treatment simply by providing names of those who he claims similarly violated the policy without any evidence or testimony that such violations occurred. While Plaintiff's Motion for Summary Judgment attaches the declaration of former employees—Ms. Grimesey and Ms. Montonaro—the assertions therein largely focus on Kossob's distinguishable violations of Defendants' non-solicitation policy and other minor timekeeping infractions that, on their face, fall far below Plaintiff's alleged conduct.

Defendants next argue that Bratton did not discriminately discipline Plaintiff. (Defs.' Mot. at 9-11.) To support their contention, Defendants put forth evidence that Bratton issued formal discipline, including reprimand similar or identical to Plaintiff's, to a variety of employees of different races and sexes. (DSOF ¶¶ 11, 52, 79.) Plaintiff's proffer of evidence that informal discipline was unwarranted (*e.g.*, Pl.'s Resp. at 27) does not inform the Court of disparate treatment. Further, while not entirely addressed in the briefing, such discipline did not result in any adverse action—as Plaintiff was neither demoted, paid less, or otherwise affected—and therefore falls beneath the Title VII threshold. *St. John v. Employment Dev. Dept.*, 642 F.2d 273, 274 (9th Cir. 1981) (noting that adverse employment action includes those acts that negatively affect compensation or transfers job duties).

Plaintiff rests the remainder of his disparate treatment case on construing Kossob as a comparator who committed similar violations but was not similarly disciplined or dismissed. However, Defendants have put forth uncontroverted evidence that Kossob was a nonexempt employee dissimilarly situated from Plaintiff. (DSOF ¶ 14.) Even were Kossob an exempt employee, Plaintiff has failed to produce testimony that she similarly violated the timekeeping policy. (DSOF ¶¶ 7, 60, 75, 80.) Plaintiff contends that any lack of time-keeping violation is irrelevant because Kossob violated Defendants' non-solicitation policy.[10] Those allegations are immaterial. Defendants did not and have not

---

[10] Plaintiff claims that the original policy was not produced by Defendants. (Pl.'s Mot. at 5-6.) However, the only admissible evidence before the Court is that the produced policy was in place in March 2012. (DSOF ¶ 7.)

contended that Plaintiff violated the non-solicitation policy and Kossob's violation or non-violation of that policy has little bearing on Plaintiff's case. Indeed, Defendants have provided evidence that such a violation would be a lesser offense under its policies. (Defs. Reply at 4.) Ultimately, Plaintiff testified that he was unaware of whether or not Kossob actually committed timekeeping violations in allegedly violating the non-solicitation policy. (DSOF ¶ 75.) Plaintiff's witnesses tacitly admitted the same (DSOF ¶¶ 60, 80), and no further evidence of such violations are before the Court.

Finally, Defendants correctly posit that even were Plaintiff able to establish a *prima facie* case for discriminatory termination, ample evidence of legitimate nondiscriminatory motivation exists. (Defs.' Mot. at 9.) Plaintiff's timekeeping violations—both admitted (DSOF ¶ 70; Pl.'s Resp. at 12) and contested (Pl.'s Resp. at 25)—serve as a nondiscriminatory reason for his termination and Defendants have provided uncontroverted testimony that they believed those violations had occurred. (DSOF ¶¶ 40-43, 70.) In response, Plaintiff argues that the timekeeping violations were merely a pretext for discrimination. (*E.g.*, Pl.'s Resp. at 15.) However, the internal discussions produced belie Plaintiff's accusations. Communications in the record do not support the fabrication of "conspiracy theories" (Pl.'s Resp. at 3), and instead lay the foundation for his non-pretextual termination as they squarely discuss irregularities in his work performance, time cards, and failure to substantiate the claimed work.[11] (DSOF ¶¶ 37-38, 40-41.) Plaintiff may have actual, even warranted grievances as to the necessity or usefulness of the micromanagement associated with some of Defendants' policies. Plaintiff may even accurately believe that he should not have been fired for violating the policies. Nevertheless, such grievances and belief do not form the basis for a Title VII liability, which is premised on a showing of discrimination or pretextual action. Similarly, Plaintiff commits a substantial portion of his Response to alleging that Defendants have failed to prove or "maintain a viable claim" that he falsified his time

---

[11] Plaintiff again alleges that some of the communications produced were fabricated (Pl.'s Resp. at 7), but fails to marshal any evidence that suggests any untoward conduct.

1    card. (Pl.'s Resp. at 12-15, 31.) That is not Defendants' burden.[12] Instead, it is Plaintiff's

2    burden to show that Defendants' stated motivation was merely a pretext for discipline or

3    termination based on gender or race. Defendant, therefore, must only produce evidence

4    that they believed such violations occurred. *Villiarimo*, 281 F.3d at 1063 (Courts "only

5    require that an employer honestly believed its reasons for its actions, even if its reason is

6    'foolish or trivial or even baseless'"). Defendants have done so. (*E.g.*, DSOF ¶ 40.)

7           In sum, Defendants marshal evidence that they indiscriminately applied their

8    policies to all employees, including Plaintiff, and Plaintiff has failed to present evidence

9    that Defendants' stated reason for discipline or termination was fabricated or specific and

10   substantial evidence to show that it was a pretext for discrimination. *Aragon v. Republic*

11   *Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002).

12                    **4.       Section 1981 Claim**

13          The inquiry under § 1981 mirrors that of Title VII. *Surrell v. California Water*

14   *Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008). Accordingly, the above analysis equally

15   applies to much of Plaintiff's § 1981 claim and requires granting Defendants' Motion.

16   However, the four-year statute of limitations under § 1981 encompasses additional

17   allegations of discrimination that must be addressed: that Plaintiff was discriminatorily

18   denied a promotion in 2011 and delayed from teleworking in 2013.

19          Defendants first move for summary judgment on the grounds that they did not

20   discriminatorily delay Plaintiff from teleworking, instead universally applying their

21   benchmarks to Plaintiff and his coworkers. (Defs.' Mot. at 13-14.) The Court agrees.

22   Defendants produced ample evidence that the performance standards required to

23   telework—including six months of "satisfactory" performance—were indiscriminately

---

[12] Plaintiff also argues that Defendants have elicited misleading testimony and mischaracterized evidence regarding Plaintiff's deletion of emails that would substantiate the work performed on the allegedly falsified timecards, as well as the date those emails were deleted. (Pl.'s Resp. 15-19.) Again, the Court cannot and will not make credibility determinations at this stage. The reason for the absence of purported evidence is of little significance. Regardless of when, how, or why, the emails are not in the record. Defendants were unable to rely on such correspondence when determining whether or not Plaintiff falsified his time cards and the Court is unable to rely on them to substantiate Plaintiff's claim of pretext.

applied to all employees of various races. (DSOF ¶¶ 20-22.) While it does appear that some additional delay may have occurred in granting Plaintiff's request, he has proffered no evidence that the postponement was motivated by race, and Defendants' comparators suggest that neither race nor sex was considered when deciding whether to grant teleworking requests. Indeed, Plaintiff testified that he did not know if he believed Bratton's alleged failure to notify her supervisors of Plaintiff's interest in telecommuting was due to his race. (DSOF ¶ 76.) If Plaintiff does not know, neither can the Court.

Defendants correctly assert that Plaintiff's failure to promote claim is time barred by the requisite statute of limitations. *See Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir. 2004) (finding that courts borrow the most appropriate state limitations period for § 1981 claims); *Ekwani v. Ameriprise Fin., Inc.*, No. CV-08-01101-PHX-FJM, 2010 WL 749648, at *1 (D. Ariz. Mar. 3, 2010) (noting the two-year statute of limitations in Arizona). Even were the claim not time-barred, Defendants argue that Plaintiff has failed to provide any evidence of pretext in the decision-making process. (Defs. Mot. at 14.) The Court agrees. Plaintiff's Response merely questions the criteria used to grade the interviewees and subjectively speculates that the criteria could be massaged in order to discriminately promote. (Pl.'s Resp. at 29.) Neither of Plaintiff's contentions is specific or substantial enough to show pretext, and Plaintiff has failed to put forth any evidence that supports his suspicions. *See Coghlan v. American Seafoods Co., LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005). Thus, the Court will similarly grant Defendants' Motion as to Plaintiff's § 1981 claim.

### 5.    Hostile Work Environment and Harassment

Plaintiff also claims—albeit in passing references—that the he was directly harassed and that such conduct was so pervasive that it created a hostile work environment. (Compl. at 1.) To establish a *prima facie* case for a hostile work environment claim, Plaintiff must raise a triable issue of fact as to whether (1) Defendant subjected him to verbal or physical conduct based on his sex or race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the

conditions of his employment and create an abusive working environment. *Surrell*, 518 F.3d at 1108. "Allegations of a racially hostile workplace must be assessed from the perspective of a reasonable person belonging to the racial . . . group of the plaintiff." *Id.* Under Title VII, the Court reviews "'[h]ostile work environment claims based on racial harassment . . . under the same standard as those based on sexual harassment.'" *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1115 (9th Cir. 2004) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 n.10 (2002)). Thus, the Court will analyze them together.

Defendants move for summary judgment on Plaintiff's harassment claim on the grounds that the conduct alleged, as a matter of law, falls short of the requisite harassment necessary to sustain a claim under § 1981 and Title VII. (Defs.' Mot. at 14-16.) The Court agrees. *Manatt v. Bank of America, N.A.*, 339 F.3d 792, 799 (9th Cir. 2003) (conduct more pervasive than alleged here was not objectively abusive and did not pollute the workplace to the point of altering conditions of employment). Indeed, allegations that Bratton denied a seating arrangement request (Pl.'s Resp. at 4) are not the kind that Title VII or § 1981 were designed to protect against.

Defendants also point to Plaintiff's testimony that he did not know whether Bratton's conduct was sexual in nature or due to his sex, and contend that Plaintiff never opposed the behavior. (Defs.' Mot. at 15.) Plaintiff's Response does not contend that the conduct was more intrusive or explicit, nor does he claim that he specifically complained of the behavior as sexual harassment. Plaintiff only disagrees with the frequency of the conduct (Pl.'s Resp. at 3), and Plaintiff's speculative assertion that the behavior "would have continued" (Pl.'s Resp. at 30) is irrelevant to the Court's current inquiry. While Plaintiff claims that he complained of the conduct in his 2010 appeal (Pl.'s Resp. at 3), the only version of that appeal that includes such complaints was not produced in discovery and is not before the Court. Plaintiff also appears to concede that he has provided no direct evidence of discrimination, but contends that the circumstantial

1    evidence produced is sufficient. (Pl.'s Resp. at 21.) In the end, Plaintiff's allegations and

2    evidence as to Bratton fall well short of a hostile work environment claim.

3         Similarly, Plaintiff's harassment claims stemming from his interactions with

4    Demar in 2012 and 2013 fail to allege any racially motivated or racially charged

5    harassment and were instead regarding work performance. (DSOF ¶¶ 72-74.) While

6    Plaintiff has testified that Demar's conduct was offensive, condescending, and

7    disrespectful, (DSOF ¶¶ 72-74), his complaints do not rise to the level that would

8    substantiate claims for racial harassment or a hostile work environment. *Faragher v.*

9    *Boca Raton*, 524 U.S. 775, 787-88 (1998) ("standards for judging hostility are

10   sufficiently demanding to ensure that Title VII does not become a 'general civility

11   code.'"). Plaintiff's Response also contradictorily contends that Demar's remarks did

12   include a racially offensive comment (Pl.'s Resp. at 30), but he offers no evidence to

13   support his claim. In any event, an alleged single remark does not create a hostile

14   environment. *Manatt*, 339 F.3d at 798 (singular comments do not amount to

15   discriminatory changes in terms and conditions of employment). As such, the Court will

16   grant Defendants summary judgment as to Plaintiff's harassment claims.

17        Defendants also contend that Plaintiff's claims are barred by the *Faragher-Ellerth*

18   defense. (Defs.' Mot. at 16.) Because the Court will otherwise grant Defendants' Motion

19   for Summary Judgment, it need not address the applicability of the *Faragher-Ellerth*

20   defense.

21                      **6.    Retaliation**

22        Finally, Plaintiff claims that he was terminated in retaliation for his complaints

23   regarding sexual and racial harassment. (Compl. ¶¶ 77-115.) To sustain his retaliation

24   claim, Plaintiff must show: "(1) Plaintiff engaged in a protected activity; (2) Plaintiff's

25   employer subjected him to an adverse employment action; and (3) a causal link exists

26   between the protected activity and the adverse employment action." *Ray v. Henderson*,

27   217 F.3d 1234, 1240 (9th Cir. 2000); *see also Scotts v. City of Phoenix*, No. CV-09-0875-

28   PHX-JAT, 2011 WL 3159166, at *3 n.3 (D. Ariz. July 26, 2011) ("Claims . . . under Title

VII and Section 1981 are parallel because both require proof of intentional discrimination. The same standards are used to prove both claims, and facts sufficient to give rise to one are sufficient to give rise to the other.") (internal citations omitted)).

An employee engages in a "protected activity" when the employee complains about or protests conduct that the employee reasonably believes constitutes an unlawful employment practice. *See Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994). For the purposes of a retaliation claim, an adverse employment action is an action that "is reasonably likely to deter employees from engaging in protected activity." *Ray*, 217 F.3d at 1243. Plaintiff must also prove that any adverse actions were caused by his protected activity. The Supreme Court has averred that "retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas S.W. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013).

Defendants move for summary judgment primarily on the basis that Plaintiff cannot show causation. (Defs.' Mot. at 11-12.) Defendants argue that Plaintiff's alleged October and November 2013 complaints are too remote from his May 2014 termination, that Plaintiff's May 15, 2014 termination was decided on May 13, 2014 (thereby eliminating causation stemming from his May 15, 2014 claims), and that his complaints made in April and May 2014 were not to a supervisor or anyone involved in his termination. (Defs.' Mot. at 11-12.) The Court agrees. The six to seven months that passed between Plaintiff's alleged opposition to discrimination and his termination, alone, cannot sustain a claim for retaliation. *Villiarino*, 281 F.3d at 1065. Further, Defendants have proffered uncontroverted evidence that the decision to terminate Plaintiff had already been made at the time of his May 15, 2014 complaints. (DSOF ¶ 43.) Finally, the remaining alleged 2014 complaints were not made to a supervisor, nor has Plaintiff provided any evidence that those who made the decision to terminate Plaintiff were even aware of such complaints. *Foraker v. Apollo Group, Inc.*, 427 F.

1    Supp. 2d 936, 944 (D. Ariz. 2006) ("Essential to establishing the causal link is evidence

2    that the employer knew that Plaintiff had engaged in protected activity.").

3         Defendants admit that Plaintiff's alleged discrimination complaints to Lwowski on

4    April 22, 2014 and May 9, 2014 could establish a *prima facie* case of retaliation but

5    contend that they have proffered uncontroverted, legitimate, and non-retaliatory reasons

6    for Plaintiff's termination. (Defs.' Mot. at 12.) As stated throughout this Order, the Court

7    agrees, and such unassailed motives refute the entirety of Plaintiff's retaliation claims.

8    *See Manatt*, 339 F.3d at 800 (employer may rebut).

9         If Plaintiff intends to seek redress for retaliation under § 1981, the analysis under

10   Title VII similarly supports Defendants' Motion for Summary Judgment. Any additional

11   protected activity permitted by the longer statute of limitations would have occurred prior

12   to July 31, 2013 and would therefore be too remote from his May 15, 2014 termination to

13   support a causal link. *See, e.g.*, *Flores v. Verdugo*, 441 Fed. App'x 454 (9th Cir. 2011)

14   (two year gap cannot serve as the basis for temporal proximity inference); *Yoon v. Kaiser*

15   *Foundation Hosp.*, 412 Fed. App'x 930 (9th Cir. 2011) (nearly two year time period

16   between adverse action and reported discrimination failed to establish causal link for

17   retaliation claim).

18                    **7.    Mayo Clinic**

19        Independently, Defendants move for summary judgment as to Mayo Clinic (the

20   parent company) for a variety of reasons. (Defs.' Mot. at 16.) Because the Court found no

21   genuine issue of fact as to any claims integral to Plaintiff's Complaint, it need not

22   separately address the claims against the parent Mayo Clinic.

23   **IV.    CONCLUSION**

24        Despite Plaintiff's lack of citation and compliance with federal and local rules, the

25   Court has searched the entirety of the record endeavoring to discern the existence of a

26   triable issue. Having found none, even when viewing the record in the light most

27   favorable to Plaintiff, the Court concludes there is no genuine issue of material fact as to

28   any of the vital elements of his claims. Defendants have offered legitimate, non-

- 22 -

discriminatory reasons for Plaintiff's discipline and eventual termination, and Plaintiff has failed to provide evidence that those reasons were retaliatory or a pretext for discrimination. Further, Plaintiff's direct harassment claims fail to reach the level contemplated by Title VII or § 1981.

**IT IS THEREFORE ORDERED** denying Plaintiff's Motion for Summary Judgment (Doc. 100).

**IT IS FURTHER ORDERED** granting Defendants' Motion for Summary Judgment (Doc. 101) as to all of Plaintiff's claims.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this matter.

Dated this 21st day of December, 2016.

Honorable John J. Tuchi
United States District Judge

- 23 -